Mr. Vogel, when you're ready. Good afternoon, may it please the court. The dispute is whether the claim language, heating, at least equivalent to heating said irradiated material at 50 degrees Celsius for 144 hours, as defined by the Arrhenius equation, is sufficiently definite to a person of ordinary skill in the art to determine what may or may not infringe. That's the issue. Defendants bear the burden by clearly convincing evidence of showing it's indefinite. Defendants have not met that burden as to showing that you could not calculate, could not calculate, the equivalent times and temperatures by using the claims, the disclosures and the specifications. You are saying that two things are preferred, the same thing as saying those two things are equivalent. You could have multiple preferred embodiments, it's quite obvious in say a mechanical type of invention, right? That doesn't mean each of them is equivalent, it just means they're all preferred. Well let's take it one step at a time. The claim language, the main claim, requires that they're equivalent to heating at 50 degrees for 144 hours, okay? That's claim 23. Claim 24, which depends on it, and this is very critical, adds the limitation heating at least four hours. Now we know at least heating four hours something at a certain temperature is going to be equivalent to the claim. Now you would go to the spec, and that's what our experts did, to try to find out what temperature matches up with four hours. And for the 934 patent, that would be at column 5, lines 57 to 63. How do we know that claim 24, the reference to four hours, is equivalent to the recitation in claim 23? It's a separate claim. It would be, but it has to meet the limitations of claims 23. You would assume that it would have to be equivalent time and temperature, because that's what has to happen for claim 23. So claim 24. So that's the basis. Well, let me get back to... Well, I guess that depends on how you read the claim. All right. Go ahead. But I think you have to read it that way. Well, that's an argument that I don't remember seeing in your brief, is that this reference to the dependent claim. Did you make that in the brief? It was not, Your Honor. The way it was made in the brief was that a person of our new skill and the art would get there doing it a different way. He would know that claim 23 was a minimum point for time and temperature based on the language. And then they said, well, to apply the Arrhenius equation using calculations, if you can find an equivalent minimum point, you can then make the calculations. And they found it at the same place. They went to where it says a minimum of four hours at column five, lines 57 to 63, and did the interpretation. But they needed more than just the four hours. They also needed the temperature, which is in dispute, but you say that's 130. That's the dispute, because... Let me ask you this, if I may, just to get me going on the right track here. The specification walks us through the process, and it starts with the forming process, it then says, okay, after it's annealed, you machine the annealed product, and then you sterilize it with irradiation. It then becomes irradiated, and in this specification, this is for the first time. And then on column six, between line 60, I'm sorry, 43, and column seven, line two, you have another heating process, post-irradiation described. Now the clue 23 refers to material irradiated, already irradiated, and that would therefore seem to direct us to this second heating process as the process that's at issue in the claim. If that's so, don't you have a problem in that that language between column six, line 140, and 37 to 70, but it doesn't contain the recitation of 130 degrees for four hours that's found in column five? Okay. That's what the district court found, who disproved it, for two reasons. One is, there's no parameter in the Arrhenius equation that relates to irradiation. It's time... No, it's in the claim. But I'm talking about in operation, you're using the Arrhenius equation. Yeah, but the irradiation process creates free radicals, and the idea is to do the heating after the irradiation to cross-link. And that's true. The same thing has occurred in prior pre-irradiation... It may be that the same thing is occurring, but we don't know whether it's to the same degree or whether the heating has the same effect in the pre-irradiation thing as it does post-irradiation. Well, remember, these claims are not quantitative. But that's a problem, too, because at page nine of your reply brief, you say, oh, no, there's no quantitative requirement of cross-linking, you're just asked to have some cross-linking. But you distinguish the prior art on the basis that it achieved a more significant cross-linking than the prior art. So how can you say that any amount of cross-linking is enough? Let me answer it this way, then. The examiner thought that the preferred embodiment of 130 degrees at 20 hours applied to irradiated material. So they didn't make the distinction. That's at A1274, because in the connection with the claims of irradiated material, the examiner... I don't understand what you're saying. I thought Judge Bryson just pointed out to you that that figure was pre-irradiation. I'm going to what happened during the prosecution. Both the examiner and the applicant stated that the preferred embodiment of 130 hours at 20 hours, which in the patent says pre-irradiation, was applicable to the irradiated material. And that's at A1274. That's where the examiner said it. And at A1283 and 128990, the applicant said... What was happening there was the claims for the examiner, the claims were rejected as being non-enabled, because there was no disclosure on an upper embodiment above 80 degrees. And the examiner said, here's what the patent does say, including the preferred embodiment of 130 degrees at 20 hours. So even the examiner didn't think there was a distinction between pre-irradiated and post-irradiated. And there's other reasons. The reactions that are attributed to the radius equations, they're the same for whether pre-irradiated or post-irradiated. How do we know? Pardon me? How do we know that? Because the reactions are this. They talk about creating free radicals and what is down there to eliminate that. So it's accomplished before irradiation and after irradiation. But it's a question of degree, isn't it? I have the same question that Chuck asked, which is, if irradiation does in fact cause scission, and I gather that's agreed that it does, then you would seem to have a different state of affairs at the beginning point when you begin the annealing process for a post-irradiated substance than for a pre-irradiated substance. It would be just luck of the draw if you ended up exactly the same starting point, wouldn't it? It would be different as far as the amount of free radicals initially. We don't disagree with that. But the purpose of the patent is to create free radicals and then to create a level of cross-linking because of the heating. But doesn't the level of cross-linking depend on how many free radicals there are in the product at the beginning? The amount of cross-linking would, but the relative removal of cross-linking would not. Well, what you're saying is the same thing you said in your reply, because we don't care how much cross-linking there is. Well, because at one time the claims did require an equivalent level of cross-linking. Yeah, but the problem is you substituted this Arrhenius equation, and as I understand it, the k-factor is the rate of cross-linking, right? Well, that's true. Yeah, so the rate of cross-linking is part of the Arrhenius equation. Again, it's how the claims are written. Well, let's take the statement that the prosecuting attorney made at the very end of the process, and this is after the amendments were made. He says, all the claims now make it clear that the material in the invention has a level of cross-linking greater than or equal to that produced by heating material to 50 from 144. He's focusing on the degree of cross-linking, isn't he? It's an accurate statement, but that doesn't change what the claims say. That's the difference. All the claims, he said, make it clear that. Yes, because you've got to remember what he's trying to compare there. At the time he did the test, the claim language required equivalent cross-linking. Then that language was taken out and put in equivalent heating. Now you put in the reference to the Arrhenius equation, right? But he also took out the language equivalent cross-linking. He didn't need it, because the rate of cross-linking is part of the Arrhenius equation. No? Why would you take out language? But it is true that the rate of cross-linking is part of the Arrhenius equation itself, right? The relative rate, not the amount. And now if you look at the language you just quoted me, Your Honor, it says this, if you look at it closely, the amount of cross-linking is greater or the same. Now he was testing whether 80 degrees in 18 hours would be greater cross-linking than the same sample at 80 degrees for two hours in prior. And the answer is yes. This wasn't wrong. This is Augustine. This is the prosecuting attorney. I understand that. I understand that. But that doesn't answer the question whether it's equivalent temperature, because that's a different analysis, a different test. It's all relative. Go back to the claims, what they're talking about. A level of cross-linking they're looking at is relative. A model of cross-linking, excuse me, pre-radical is being performed. And then someone skilled in the art would know what we're trying to accomplish here is what's an equivalent time temperature heating, relatively speaking, to accomplish it. Because you've got to remember, there's all types of polyethylenes that can be used. There's all different levels of irradiation that can be used. So you can't deal with a claim that's going to talk about quantitatively the amount of cross-links. When you refer to equivalence, it has to mean equivalent with respect to what? I mean, Judge Moore and I are equivalent in some respects and not equivalent in others. We're equivalent in our rate of pay. We're not equivalent in our sex. So what is, when you use equivalence, for example, in Claim 50 of the 934, selected to be equivalent to at least heating said irradiated material at 50 degrees for 144. That's equivalent with respect to what? Heating. Read the language. At least equivalent to heating. Under the Arrhenius equation, isn't that an equivalent reaction state will be achieved by this combination of temperature and time vis-à-vis the other temperature and time that's employed? I don't know if you read it that way. Well, isn't that what the Arrhenius equation does? It tells you, you pick a temperature and a time and the Arrhenius equation will give you a curve that gives you all of the temperatures and times that produce the same reaction state, correct? Yes. Okay, so it is equivalent with respect to reaction state, right? Yes. Okay, and isn't it true that here the pertinent reaction state is the degree of cross-linking? To a level, yes. It doesn't qualify what that has to be, though. But wait, wait. Because it's the heating time and temperature. Take a look at 10.25. Take a look at 10.25. This is your expert in 31. I'm sorry, what page are you on? Page 10.25 of the appendix. In paragraph 31. Okay, go on. He says, in this case, the desired state of the reaction is the reduction of the number of free radicals to a specified level. But it's still a relative level because the claim is broad that it could cover all types of different starting materials and all different types of radiation. And every time you do that, you are going to have a different type of material to start with and a different level of free radicals when you do the irradiation. But that's not the invention. The invention then is, well, what do you do then to accomplish sufficient reduction of the free radicals by doing it outside the presence of oxygen through heating? What type of heating is accomplished? The claim identifies, and the two experts, compared to none from their side, identify how you accomplish that through mathematics. It is equivalent heating to those temperatures that is the term that's at dispute. It's not equivalent cross-linking. It's not the amount of free radicals you make. That's not a requirement of the claims. It's equivalent heating. Okay. I tell you what, Mr. Vogler, we've used a lot of your time in questioning, so we'll give you your full rebuttal time. I appreciate it, Your Honor. Mr. Stillman? Mr. Callahan, I'm sorry. And we are going to hear only from you, Mr. Callahan. Is that right? That's accurate, Your Honor. Okay. Very good. Thanks. Please, the court, Your Honors. The claim term and issue, as the court is aware, was added into the claims specifically to overcome a prior art reference, the Stryker reference, that disclosed post-irradiation heating in the absence of oxygen for a particular time in a way that invalidated the claims. How Medica made an effort to get around that prior art by incorporating the Arrhenius claim limitation into the claims. There is no dispute, as we pointed out in our opening summary judgment brief and in our briefing before this court, there is no dispute that the specification of the three patents that issue does not contain sufficient information about the Arrhenius equation or missing variables to allow a person of ordinary skill in the art to apply the Arrhenius equation to determine equivalent times and temperatures to 50 C at 144. Let me see if I understand what is in dispute and what's not. Suppose that in this specification, in place of the sentence that everybody has spent so much time pondering, the preferred time and temperature is 130 for 20 with the minimum annealing time being about 4 hours, parentheses, requiring a temperature at the high end of the range, close parentheses. Suppose in place of that sentence there had been a sentence which said the full equivalent of 144 hours at 50 is 4 hours at 30, 4 hours at 130, sorry. Would you agree that under those circumstances the patent was not indefinite? No, Your Honor, because those two sections, as I believe that, Brice, you pointed out in the initial question, relate to two different types of material. Fair point. Let me say, let me add to my hypothetical that that sentence appears there and then it also appears at the beginning of column 7 so that you've got it both places. Would you agree that the Arrhenius equation plus those two sentences, it requires a person of skill in the art to do some math, but it would be sufficient to pass muster under the indefinite test? We don't contest, Your Honor, that for purposes of this appeal that a person of ordinary skill in the art might be able to utilize two disclosed time-temperature equivalents for identical material. And it is critical that that material be identical because the claims say it is. Does it also require that they achieve the equivalent amount of cross-linking? Yes, Your Honor, we believe that it does. That is the entire purpose of the Arrhenius equation. The Arrhenius equation can be applied to any or many, certainly, types of materials. It measures the rate of a reaction. The more temperature you use, the faster the reaction takes place. But in this instance, you must know the reaction. And in this instance, there's no question that the reaction we're talking about is combining free radicals to form cross-links between carbon strands. So the issue as between irradiated and unirradiated materials, I think the patent makes it quite clear, the specification makes it quite clear that we are talking about for purposes of application of the Arrhenius equation to very different, meaningfully different materials. And here's why. When we're talking about the use of irradiated materials, the patent tells you, and this is in column 4, lines 44 through 46 of each of the specifications, for irradiated materials, it says you must heat the implant for at least 48 hours. For unirradiated materials, the section of the specification, Judge Bryson, that you were talking about, it says the minimum annealing time is 4 hours. So those irradiated versus unirradiated, that is a big and material difference that precludes how medical from being able to come in and say we're going to set 50 degrees C at 144 hours equal to 130 degrees C for 4 hours because we think those are equivalent to one another. They are fundamentally not equivalent to one another because one material is irradiated, the other is unirradiated, and the claims require a comparison of the 50144 material to said irradiated material. So they must be identical. In this instance, the intrinsic record is clear that to start off with, irradiated material and unirradiated are not identical. I'm sorry. I missed your reference earlier to the place in the specification that it had referred to the minimum number of hours, I think you said, for irradiated material. Yes, Your Honor. Where is that? Column 4, lines 44 through 46, this comes from the 934 pattern, states... Oh, okay. That's the citation. The other problem, Your Honors, even if we could get over the fact that... One could certainly, I suppose, quibble with, since that's in terms of in general, you could, you might quibble with the question of whether that was intended to establish a minimum. Perhaps. Were you to think that that's less than unequivocal, Judge Bryce, and I point you to column 1, lines 56 through 65, which says, it has also been recognized that the amount of free radicals generated is dependent upon the radiation dose, and that then the distribution of free radicals within a piece of polyethylene depends upon a wide variety of factors, including the geometry of the component, what its shape is, the type of polymer you're using, the dose rate, the type of irradiation, all of those types of things. And again, the claims, to go back to the language of the claims, require a comparison with said irradiated material, that is, the 50C at 144 for 144 hours material. Let me ask you a question, Mr. Callahan, that's a little off the beaten path here, perhaps, but in order to understand how you see the indefiniteness doctrine as working, it would be helpful to me. Suppose that the accused, I don't know what the accused infringing device is, how it works, and so forth, that's not been before us, but suppose that the accused device, or the accused method, was to heat irradiated material at 50 degrees for 144 hours, exactly as prescribed in Claim 23. Would you say that notwithstanding that the claim would appear to read squarely on that process, or that product created by that process, that nonetheless the patent is invalid even as to that very definite number? I do, Your Honor, and the reason I do is because the purpose of the definiteness requirement is to create a boundary. Here, it is a critical thing to do. This Court's jurisprudence of Amgen and I believe Standard Oil talks about the heightened importance of making certain that a claim is definite when the limitation that you were looking at was added to overcome the prior art. Here, I think if you look at the language of the claims themselves, they're still indefinite. Even though you could point to one instance where we would say, I think what Your Honor is saying is how could 5144 not be equivalent to 5144? Exactly. The claim language we'd submit, Your Honor, requires us to be able to have a boundary not only for purposes of the accused product, but also for purposes of determining whether there is prior art that invalidates the claims. And as the Court knows from the procedural history, that is one of the twists that this case took. Mr. Callahan, am I understanding your argument to be that definiteness is required over the full scope of the claims? I believe that's correct, Your Honor, yes. Here, you need to be able to use the definiteness for a variety of things, not just determining whether the identical 50C from 144 type product would infringe. You need to know how close I can get. If I don't want to use 50C, I want to use 70C, or I want to heat my product for a longer or shorter period of time for some other reasons. I'm just wondering whether, this is an extreme case perhaps, or at least my hypothetical is an extreme instance, but if, on the other hand, you had a claim that had a range, which was very clearly marked out, and it was a broad range, but some language slipped into the claims, loose language about extending the claims at either side of that range in a way that led to lack of clarity as to how far beyond the scope of the claimed range the claim applied to. Would you still take the same position that the right approach is not simply to say the patent is limited to the explicitly claimed range, but the entire patent is gone? I would, Your Honor. I think that hypothetical, I believe, begins to get relatively close to the Amgen case, where there was a numerical limitation. I think it was $160,000. I could be wrong on that. There's a numerical limitation in the claims that was added to get over prior art that disclosed a limitation in the 128,000 range or thereabouts. The patentee then said, I'm going to use about $160,000. This court confirmed a finding of indefiniteness under the principle that where a claim term is here being used to create a numeric boundary or a line that serves to distinguish the limitation of the claims because of the prior art, it is critical that it be spot on. Close enough for a claim term that admittedly has no scope of equivalence is insufficient in our view. The other issue with the four hours for 130 degrees, even if we get past the point that one refers to an irradiated material, one refers to an irradiated material and we have to test the claims. Hamedika's entire premise is that both 50 degrees C for 144 hours and 130 degrees C for 4 hours are disclosed minimum time and temperatures. That is absolutely demonstrably not the case for either one. In the case of 144 hours at 50 C the patent describes a minimum time and temperature right before. It describes 144 hours at 50 C as a preferred embodiment. It says you could heat it for at least 48 hours, a lower time, and at a temperature of 37 C to 70 C. But the claim does talk in terms of the minimum. The claimed minimum. But Hamedika says both of these are minimum time temperatures to practice the invention. So they are incorrect in our view for 50 C at 144 hours, which is preferred, not a minimum. They are also incorrect when they use 4 hours at 130 C. In the first instance nowhere does the patent put 50 C in 144 hours equivalent to 4   C. More problematically . I understood to be the various steps in the process of Mr Bugler and do you read the specifications the same way, which is to say that after formation you have a heating step which is followed by molding or machining, not molding, machining and that in itself may also lead to a further annealing step. And then you have a heating step. So you have either two or possibly three stages of heating. Is that your understanding? That's accurate, Your Honor. I think as Your Honor walked through the different places of the specification, Your Honor accurately described the way the specification describes this process. One could read this as alternative embodiments, I suppose, but you don't read it that way. You read this as a single sequence. Well, the claims, Your Honor, are talking about irradiated material and that is the end step of the process. You begin this process with a bunch of plastic or polyethylene pellets. You first have to pound those into a slab. You then carve or machine a medical implant out of that slab. You take that medical implant, you seal it inside something in an oxygen-free environment. You then irradiate it to sterilize that because we're going to keep this on the human being. You sterilize it and then to recombine the free radicals you've created by irradiation, sterilization irradiation, you heat the product. Right, but you left out the heating of the formed product before machining. That's accurate. Right, all right, but we can agree that that is part of what the spec describes as the manufacturing process. Were there claims directed to those earlier heating stages at earlier stages of the prosecution? Judge Jack, these are the 6th, 7th, 8th, and 9th patents in an unbroken continuation of 9. These are the last. So some of the earlier patents were addressed to the earlier heating stages? That's accurate, and these patents came about as the continuation process continued and Medica sought to make its claims broader as time went on. Thank you, Mr. Hanlon. Thank you, Your Honor. Mr. Logan. Thank you, Your Honors. The issue is, is the claim language sufficiently definite to a person learning a skill in the art to determine the boundaries for infringement? That's the issue. Then to do that you need to go to the claim language to see, you know, what is meant by at least equivalent to 50 degrees for 144 hours. And I told you, I indicated that if you look at the next claim, it says that you could look at a heat for 4 hours, go with the spec and find out what matches up for 4 hours. So, and our experts showed you another way, how to get to equivalent. So then to me it seems like the only issue that, I shouldn't say the only issue, but certainly one of the issues that is in the minds of the court is, is the disclosure of the heating time and temperatures before irradiation equivalent to after? Again, I direct your attention to the, where at least the examiner and the applicant at the time of the application thought they were all one and the same. It didn't make any difference. Two, the irradiance equation has no requirement for anything about irradiation at all. It's time and temperature. Three, the temperature ranges for pre-irradiated material and post-irradiated material is the same for both. It is for pre-irradiated at 25 degrees. 540 degrees, column 5, lines 57, 58. For post-irradiated, it's the same, 25 to 140 degrees, column 7, line 12, where I think Mr. Callaghan got off base is the reference to the language on column 4 of the patent, lines 44 to 47. That's where it says at least 48 hours and a temperature of about 37 to 70 degrees, and preferably for 144 hours at 50 degrees. Let's break that down. That's in general for the implant. The implant, when it's been heated, in this situation is in a plastic bag, so they've got to have a temperature of between 37 and 40 degrees. 37 to 70. Otherwise the bag's going to melt and it's in. It's in the bag so it doesn't get to oxygen. Proof of that is shown in column 7, lines 1 to 5. It tells you why it has to be there. So it has to be 48 hours because you have a much lower temperature than 144. So remember, higher temperature, lower time you have to heat. So remember the context of that. And then to get back to Judge Moore's first question, the language, preferably for 144 hours at 50 degrees Celsius. Now, first of all, the claim controls what the minimum is, in the expert's view and also our view. 50 degrees, 144. But that language, look, it says preferably 144 hours at 50. I think a fair reading is preferably is preferred temperature, excuse me, the preferred hours. It doesn't say preferred time and temperature as in column 5, lines 57 to 63. It's preferably for 144 hours at 50 degrees Celsius. A fair reading is that, yeah, it's preferred hours, but it's also could be considered a minimum because of the temperature. And that's consistent with the claim because the claim is the baseline. Why would somebody have a claim that didn't have a baseline minimum requirement? For example, if it was the claims we know says 50 degrees for 144 hours, would it make sense that, gee, 50 degrees at 120 hours works too, and it's not covered? So you would have to assume that, and I think it's a fair assumption by the experts, and I think the reality, that that's a minimum. So you got one minimum. The experts showed you how to get to the second minimum. I explained you could also look at claim 44 to get the second minimum. So then the issue turns on, and I think it really does turn on. Is pre-irradiation heating the same as post-irradiation for purposes of the irradiance equation? Because you're using the same material. Yes, it's being treated, but it's the same material. And again, the examiner thought it was making a difference, and the proof of that is at A1274. Applicants didn't think it made any difference. The proof of that is at A1283, 1289, 90. And it shouldn't make any difference because it's a heating thing, a time and temperature heating thing, and the claims don't require an equivalent level of heating. So cross-linking, it was taken out of the claims. They took that out of the claims, except for one. Claim 24 of the 308 patent still has equivalent cross-linking. Claim 23. Pardon me? 23, I think you mean to refer to, right? Yes, 23. But during the prosecution, the applicant, based on the request of the examiner, took out the requirement of equivalent cross-linking. It all came out except for one claim, and that's a distinction. We have your case. Thank you very much. Both counsel, the case is submitted.